IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JASON BRUCE HODGES,** <br><br> **Petitioner,** <br><br> v. <br><br> **DARREN GALLOWAY, Warden, Shawnee Correctional Center,** <br><br> **Respondent**. | Case No. 23-cv-00017 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Jason Bruce Hodges filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his conviction for burglary and identity theft. [1]. He presents four claims for relief. For the following reasons, Hodge's petition [1] is denied, and no certificate of appealability shall issue.

**I.  Background**

**a.  Factual History**

Federal courts considering habeas petitions must presume that the factual findings made by the last state court to decide the case on the merits are correct unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *McCarthy v. Pollard*, 656 F.3d 478, 483; (7th Cir. 2011); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). As Hodges has not provided clear and convincing evidence to rebut the presumption of correctness here, this

factual background is adopted from the Illinois Court of Appeals' findings on direct appeal.

Hodges was convicted by a jury in Du Page County of four counts of retail theft, four counts of burglary, two counts of identity theft, and theft by deception. [12-1], *People v. Hodges*, 2020 IL App (2d) 180849-U. At trial, the prosecution introduced evidence that proved the following:

In June 2014, TJX, the parent company of Marshalls and other large retail chains, opened an investigation into Hodges after a negative credit report indicated that refunds issued to his debit card exceeded the purchases made. *Id.* at *2. The investigation revealed that on June 1, 2014, Hodges went into a Marshalls store in Broadview, IL and purchased items with stolen credit cards totaling $294.26. *Id.* Hours later, Hodges returned the items to a Marshalls store in Lombard, IL and received a refund to his personal debit card in the amounts of $294.26. *Id.* On June 5, 2014, Hodges repeated the scheme, making a purchase of $298.63 on a stolen credit card from a Marshalls in Berwyn, IL, only to return the merchandise at the Lombard Marshalls later that day for a refund to his debit card. *Id.* at *2-*3. At trial, a Citibank investigator testified that the June 1 purchase was made on a credit card belonging to Raul Y., while the June 5 purchase was charged to a credit card belonging to Richard G. *Id.* at *3. Both individuals disputed the Marshalls transactions, so Citibank credited the amounts and suffered a financial loss. *Id.*

On June 25, 2014, Detective Menolascino of the Lombard Police Department was assigned to investigate a pattern of thefts from Marshalls stores. *Id.*

Menolascino reviewed the TJX investigation, as well as surveillance videos of Hodges making the purchases in Broadview and Berywn and returning the items in Lombard. *Id.* Menolascino then arrested Hodges and brought him in for questioning. *Id.* Hodges admitted to Menolascino that he had a gambling problem and that he was the person in the surveillance footage making the transactions. *Id.* Hodges refused, though, to disclose how he obtained the stolen credit cards. *Id.* On June 4, 2015, Hodges was indicted on 25 counts of theft by deception, retail theft, burglary, and identity theft. *Id.* at *1. The state dropped 14 of those counts prior to trial. *Id.* The state proceeded to trial on the remaining 11 counts. *Id.* All but two counts charged conduct that took place in Du Page County. One retail theft and one burglary count were based on conduct that took place in Broadview and Berwyn, which are in Cook County. *Id.* Before trial, Hodges moved to dismiss the Cook County-based charges for improper venue. *Id.* The trial court denied the motion to dismiss, finding that the conduct in Cook County and Du Page County constituted one course of conduct that could be charged in Du Page County. *Id.*

A jury found Hodges guilty of all 11 counts. *Id.* At sentencing, Detective Menolascino testified that Hodges had a pattern of fraudulent transactions from other TJX stores not included in the indictment: between April and August 2014, Hodges received refunds to his personal debit card in the amount of $17,365.82. *Id.* at *3-*4. The court sentenced Hodges to a total of 14 years in prison after determining that all counts merged into four burglary counts and two identity theft counts. *Id.* at *4. The court sentenced Hodges to concurrent terms of seven years on

each of the four burglary counts and concurrent terms of seven years on each of the two identity theft counts. *Id.* The burglary terms and identity theft terms were to be served consecutively to each other. *Id.*

### b. Procedural History

#### i. Direct Appeal

Hodges' trial counsel continued to represent him on direct appeal. The Illinois appellate court affirmed Hodges' convictions and sentence on May 6, 2020. [12-8] at *2; *People v. Hodges*, 2020 IL App (2d) 180849-U. Hodges then filed a petition for rehearing with new representation that the appellate court granted. [12-8] at *2. His renewed brief on appeal argued that 1) all convictions should be vacated for improper venue; 2) the state had insufficient evidence to prove the elements of a burglary offense, namely that Hodges entered the Marshalls store in Lombard with intent to commit a theft; 3) the state had insufficient evidence to convict Hodges of identity theft without proof that he used another person's "personal identifying information"; 4) the trial court's sentence was excessive and was an improper imposition of consecutive sentences; and 5) there was insufficient evidence to convict Hodges of burglary because the State failed to prove beyond a reasonable doubt that he entered Marshalls "without authority." [12-1], *Hodges*, 2020 IL App (2d) 180849-U, at *4. On August 26, 2020, the appellate court, in an unpublished order, held that the trial court erred by not dismissing counts charging activity that solely took place in Cook County. *Id.* at *5. The court vacated one count of retail theft and one count of burglary

4

and affirmed the original sentence and on the remaining counts of the conviction. *Id.* at *11.

On November 4, 2020, Hodges filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising all claims denied by the appellate court. [12-5]. The state supreme court denied the petition. [12-6], *People v. Hodges*, 163 N.E.3d 716 (Ill. 2021).

### ii. Post-Conviction

On March 18, 2021, Hodges filed a *pro se* post-conviction petition, arguing that: (1) counsel provided ineffective assistance at trial by conceding defendant's guilt in his closing statement, (2) counsel was ineffective on appeal by failing to argue that the jury was not properly instructed on identity theft, and (3) counsel was ineffective on appeal for relying on an outdated sentencing statute. [12-9]; [12-8] at 3, *People v. Hodges*, 2022 IL App (2d) 210288-U. On May 12, 2021, the trial court summarily dismissed the petition, finding all claims lacked merit. *Id.*

Hodges appealed the denial of his post-conviction petition. *Id.* The state appellate defender moved to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), concluding that an appeal on these claims would be without merit. *Id.* Hodges provided a *Finley* response, adding additional claims for ineffective assistance of counsel and improper venue. *Id.* The state appellate court ultimately granted the appellate defender's motion and affirmed the trial court's decision. *Id.* The court confined its opinion to the three claims presented in Hodges' original *pro se* post-conviction petition and dismissed each claim on the merits. *Id.*

After the state appellate court affirmed the post-conviction trial court's decision, Hodges did not seek leave to appeal from the Illinois Supreme Court. [1] at 4. This timely habeas petition now follows. *Id.* In it, Hodges raises a mix of claims previously raised in his direct appeal and post-conviction filings. *Id.*

## II. Legal Standard

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks omitted). To properly exhaust a claim, a petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

If a petitioner has failed to properly assert his federal constitutional claims at each level of state review, then his claims are procedurally defaulted. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529,

536 (7th Cir. 2012). If a habeas petitioner overcomes procedural default, only then can a federal court assess the merits of his federal habeas claims.

A federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); see also *Burt v. Titlow*, 571 U.S. 12, 18-19, 134 S. Ct. 10, 15 (2013). This is a "highly deferential standard for reviewing claims of legal error by the state courts." *Id.*

### III. Analysis

Hodges raises four claims in his habeas petition: 1) as a matter of law, the receipts he possessed containing other individuals' credit card numbers could not satisfy the "personal identifying information" element of the Illinois identity theft statute; 2) the State made improper comments during closing statements referring to conduct that took place in Cook County, not Du Page County; 3) the jury was improperly instructed on identity theft; and 4) the state appellate court should have granted a new trial after vacating two counts for improper venue on direct appeal. [1]. The State argues that all claims should be dismissed, either as not cognizable or procedurally defaulted. [11]. The Court agrees that Hodges does not present any claim that warrants relief.

### a. Claim One

Hodges was charged with identity theft under 720 ILCS 5/16-30(a)(4). That statute provides that any person who "uses, obtains, records, possesses . . . any personal identifying information or personal identification document of another knowing that such personal identifying information or personal identification documents were stolen or produced without lawful authority" has committed the crime of identity theft. 720 ILCS 5/16-30(a)(4).

In Claim One, Hodges contends that his identity theft conviction rested on "having a partial Credit Card number (4 digits on a receipt)" and that "the last 4 digits are not personal identifying information as defined by 720 ILCS 5/16-0.1." [1] at 5-6. Hodges previously raised this claim on direct appeal to the Illinois appellate court and in his subsequent PLA. [12-1], *Hodges*, 2020 IL App (2d) 180849-U, at \*8-\*9. The appellate court disposed of the claim on the merits, holding that the personal identifying information element is satisfied by another person's assigned credit card number. *Id.* (citing 720 ILCS 5/16-0.1). The court continued, "the evidence showed that the receipts [possessed by Hodges] contained the credit card numbers of Raul Y. and Richard G., even if it only displayed the last four digits. The defendant thus possessed the personal identifying information of others." *Hodges*, 2020 IL App (2d) 180849-U, at \*9.

The state argues that the claim is non-cognizable as Hodges effectively disputes a state court interpretation of state law. [11] at 5. This Court agrees. The Due Process clause of the Fourteenth Amendment requires the prosecution to put forward evidence of each element of an offense, such that a reasonable factfinder

8

could find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). Yet the construction of the elements of a state criminal statute is a question reserved for state courts. *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991). Ergo, even if we are to generously read Hodge's claim as a sufficiency of the evidence claim invoking the U.S. Constitution, this Court still may not review the Illinois appellate court's interpretation of the identity theft statute. The court decided on direct appeal that credit card numbers on a receipt satisfy the "personal identifying information" element of the identity theft statute. *Hodges*, 2020 IL App (2d) 180849-U, at *9. Hodges cannot use a habeas petition to "press his preferred interpretation of Illinois law." *Curtis v. Montgomery*, 552 F.3d 578, 581 (7th Cir. 2009). Under the interpretation of "personal identifying information" adopted by the Illinois appellate court, the prosecution presented sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Hodges committed the crime of identity theft. *See id.* This Court cannot disturb that interpretation.

Hodges also includes a cursory argument that his conviction violated his "constitutional right to venue." However, venue is a matter of state law. *See* 720 ILCS 5/1-6; *Carroll v. Gilmore*, 95 C 7493, 1998 WL 481076, at *3 (N.D. Ill. Aug. 11, 1998) (dismissing improper venue claim as non-cognizable). The Court must thus defer to the state court's resolution of Hodges' venue claims.

For the foregoing reasons, Claim One fails.

### b. Claim Two

In Claim Two, Hodges argues that the prosecution made improper statements during closing argument by telling the jury about actions he took in Cook County. He first raised a version of this claim in his *pro se* post-conviction petition, framing the issue as an ineffective assistance of trial counsel claim. The trial court summarily denied the petition. [12-8], *Hodges*, 2022 IL App (2d) 210288-U, at *3. On appeal, the Illinois appellate court deemed the claim waived for lack of fair presentation. *Id.* Hodges did not seek leave to appeal from the Illinois Supreme Court thereafter. [1] at 4.

Before presenting a claim in a federal habeas corpus petition, the petitioner must first give the state courts an opportunity to act on the claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). This requires the petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. In Illinois, that means asserting claims to the Illinois appellate court, as well as in a PLA to the Illinois Supreme Court. *Snow v. Nicholson*, 880 F.3d 857, 864 (7th Cir. 2018). When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted, and a federal court is barred from reviewing the claim's merits. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Courts may only excuse a procedural default if the petitioner can show a) cause for the default and actual prejudice as a result of the alleged violation of federal law, or else b) that failure to consider the claim will result in a fundamental

miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Here, Hodges did not raise Claim Two at each level of review. He first included it in his *pro se* post-conviction petition but did not properly raise it in his appeal of that petition or in a PLA. Hodges does not make any argument for cause and prejudice that would excuse the default; he only states that he did not file a PLA on post-conviction because the state supreme court denied his PLA on direct appeal. [1] at 4. Accordingly, Claim Two is procedurally defaulted.

### c. Claim Three

Next, Hodges argues in Claim Three that the jury instructions given at trial were deficient for not specifying the location of the charged conduct. He raised a version of this claim in the post-conviction stage as an ineffective assistance of counsel claim, contending that the jury could have found him guilty of identity theft based on his possession of that information in Cook County. *Hodges*, 2022 IL App (2d) 210288-U, at *2.

As with Claim Two, Hodges failed to raise Claim Three at each stage of state court review. He only raised the claim in his *pro se* post-conviction petition and on appeal of that petition. After the Illinois appellate court denied the claim on the merits for lack of prejudice, Hodges did not file a PLA asserting the claim. Claim Three is procedurally defaulted.

### d. Claim Four

11

Hodges again raises improper venue in Claim Four, arguing that the state appellate court should have granted him a new trial on all charges instead of vacating the convictions based on conduct in Cook Couty. As stated with regards to Claim One, improper venue—as well as its attendant remedies— is a state law claim. This Court cannot grant federal habeas relief for an error of state law. Accordingly, Claim Four fails.

## IV. Certificate of Appealability

If Hodges wishes to appeal this denial, he must first obtain a certificate of appealability. Under 28 U.S.C.§ 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court" unless the circuit justice or judge first issues the certificate. 28 U.S.C.§ 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citations omitted). For the reasons discussed above, Hodges has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should have been resolved differently, nor would they determine that Hodges deserves

encouragement to proceed further on his habeas claims. The Court declines to issue a certificate of appealability.

## **CONCLUSION**

For the reasons discussed above, Hodges' habeas petition [1] is denied, and the Court declines to issue a certificate of appealability. The Clerk is instructed to enter judgment in favor of Respondent and against Petitioner.

E N T E R:

Dated: January 11, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge